## Hartley *versus* Kirlin *et al.*

*What discounts in bank are renewals of old debt.*— *Validity of judgment as collateral security for renewals.*— *What may be recovered thereon.*— *Change of firm by whom judgment was given, effect of on rights of plaintiff.*

| 45 | | 49 |
| 27 SC | | 188 |

1. Where a note discounted at bank, is taken up at maturity, and paid by funds not the proceeds of a new note discounted, the new note is not a renewal of the first, nor a continuance of the same debt.

2. Where a plaintiff in a judgment given him by a firm composed of three members, for liabilities incurred upon notes discounted for their use, continued his liability as accommodation drawer of new notes given by the firm, after he knew that one member had retired, he cannot, in a *scire facias* to revive his judgment, in which the two surviving members of the old firm and the administrator of the retiring partner, who died after suit brought, were defendants, recover for the new liabilities assumed after the dissolution, unless they were renewals of the notes of the old firm.

3. The defendant's liability under the judgment is measured by the plaintiff's liabilities and not by his payments for them : but the judgment will be controlled by the court, and no recovery permitted for liabilities discharged by the defendants themselves.

4. Where upon the *scire facias*, usury on the part of holders of certain notes was claimed as a defence, if established and the proper deduction made in an action on the notes, the judgment will be controlled by the court to that extent, for no more can be recovered on the judgment than what the plaintiff was legally liable for in their behalf : but it is not a valid objection to the plaintiff's recovery, for his rights cannot be involved in the usury dispute.

5. The administrator of the deceased partner cannot, under the plea of payment, establish as a defence and satisfaction *pro tanto* that the plaintiff had, after the dissolution, levied upon a large amount of property of the new firm and relinquished his levy : the fact should have been specially pleaded ; as it was not, it could not be found by the jury.

ERROR to the Common Pleas of *Luzerne county.*

This was a *scire facias* to November Term 1859, by William Hartley, to revive and continue the lien of a judgment entered as No. 422, of November Term 1857, against E. H. Kirlin, Reuben Godshall and James S. Slocum, administrator of R. A. Oakford. The original judgment was against Kirlin, Godshall, and Oakford. While the suit was pending, the death of Oakford was suggested, and his administrator, Slocum, substituted.

The undisputed facts of the case were as follows :—

In 1857, E. H. Kirlin, Reuben Godshall, and R. A. Oakford were in business in the borough of Scranton, under the name and firm of Kirlin & Co., in the manufacture of sash, lumber, &c. On the second day of October 1857, they executed and delivered to William Hartley a judgment-note, under seal, of which the following is a copy, to wit : " $20,000. Scranton, 2d October 1857. For value received, we promise to pay to William Hartley twenty thousand dollars without defalcation,

9 WR.—4

and we do hereby confess judgment for said sum of twenty thousand dollars with costs of suit and release of all errors, hereby waiving inquisition upon real estate, and confessing condemnation thereof. Witness our hands and seals, &c."

At the time of giving the above note the parties signed in duplicate a writing of which the following is a copy:—

"Rd. A. Oakford, E. H. Kirlin, and Reuben Godshall this day execute and deliver to William Hartley their judgment-note for twenty thousand dollars. Now said note is given to secure and indemnify said Hartley against payment of any notes, drafts, bills of exchange, endorsements, and any and every paper or instrument whatever, which has been executed or may hereafter be executed by him for or on account of said Oakford, Kirlin, and Godshall, trading as Kirlin & Co., and against liability therefor, and against any liability whatever incurred, or which may be incurred in any way for them, and against all costs, expenses, and damages which may arise in any case which he may now be or become the surety in any manner for them. And Hartley may proceed, by execution or executions, to collect said judgment, if he deem proper, without first having paid off any such liability—always, however, applying any and all moneys collected towards the extinguishment of claims whereon he is or may become liable.

"And upon the extinguishment of all such liabilities, by Kirlin & Co., and payment of costs on said judgment, said Hartley will enter satisfaction of the judgment.

"Done in duplicate, October 2d 1857.
        (Signed)          "Rd. A. Oakford,
                          "E. H. Kirlin,
                        . "Reuben Godshall,
                          "William Hartley."

On the 3d of October 1857, judgment was entered upon the note for the sum of $20.000. This judgment was absolute on its face, the accompanying agreement not being filed of record.

William Hartley, for some time prior to the giving of the judgment note, had dealt largely with the firm of Kirlin & Co. He was also a relative of E. H. Kirlin, one of the members of the firm. The firm of Kirlin & Co., composed of Kirlin, Godshall, and Oakford, continued to do business until the 1st of June 1858, at which time the firm was dissolved, and R. A. Oakford retired from the firm. Notice of this dissolution was given to William Hartley at or about the time of the dissolution.

E. H. Kirlin and Reuben Godshall continued the business at the same place under the same firm name of Kirlin & Co., and William Hartley continued to deal with them as before for a

period of nearly two years from the time of the dissolution, and until the firm composed of Kirlin and Godshall became insolvent.

For convenience' sake the two firms were distinguished in the argument according to the time of their formation respectively, as "the old firm" and "the new firm"—the firm as it existed prior to June 1st 1858, and composed of the three partners, being "the old firm," and the firm after Oakford's retiring being "the new firm."        .

Prior to the time of giving the judgment-note which was the foundation of this suit, the old firm of Kirlin & Co. had a line of discounts at the Manufacturers' and Mechanics' Bank of Philadelphia, and also another at the Cecil Bank, Maryland; at each of these banks the arrangement was that Kirlin & Co. were to receive the bills of the bank for circulation, and to pay them out to their workmen, and that whenever a discounted note was paid at maturity in such funds as the respective banks deemed desirable, then the bank would grant a new discount.  On these notes, which were accommodation notes for the benefit of Kirlin & Co., Hartley was liable either as drawer or endorser.  After the dissolution, and retiring of Oakford, the new firm availed themselves of this arrangement and continued to loan money of the banks for about a year and a half after the dissolution; in each instance, however, before a note was discounted, the prior note was paid.  All the notes discounted at these banks, and offered in evidence, were dated after the first of June 1858; after the dissolution of the firm and notice to Hartley.  It was claimed by the defendants that they were notes of the new firm, and not of the old firm; that Hartley endorsing them with knowledge of the dissolution, could not hold Oakford upon them in this suit.  This was the defence to the notes discounted at the above-named banks.        .

There were, however, two other notes offered in evidence by the plaintiff upon which he was liable, one for $1850, called in the argument the Drake note, and the other for $1500, called the Sterling note.  It was upon these notes that the jury made up their verdict.  The defence to these notes was as follows: On the 1st of February, 1859, Hartley issued a *pluries fi. fa.* to April Term 1859, on the judgment which was sought to be revived.  On this writ the sheriff returned a levy of four hundred thousand feet of pine and hemlock lumber, and three horses, as the property of Kirlin & Co., which remained in his hands unsold.  The sheriff's return is dated April 4th 1859.  On the 15th of August 1859, by an agreement filed of record between Hartley's attorneys and E. H. Kirlin, who signed the name of Kirlin & Co. to the agreement, the levy on the foregoing property was stricken off without the concurrence or consent of

Oakford, who had at that time been out of the firm for over a year. It was proved that this property levied on was more than sufficient to have paid the notes upon which Oakford was liable. It was .claimed as defence for Oakford's estate, that it could not be held liable in this suit, after the plaintiff, having knowledge of the dissolution of the firm and the position in which Oakford stood, had once held in his hands the means of satisfying his judgment, and had relinquished them without Oakford's assent.

It was also claimed as defence to all the notes that there was no evidence that Hartley had paid any of the notes offered in evidence, but the evidence was that he had not paid them.

The court below (CUNNINGHAM, P. J.) explained to the jury the character of the original judgment, and referred to the writing accompanying the bond upon which it was entered, showing its condition, though absolute upon its face, to be in fact to indemnify against liabilities for Kirlin & Co., then composed of Oakford, Kirlin, and Godshall, and then proceeded :—

"The question has now arisen whether there are any such liabilities now shown? The plaintiff claims that he shows notes in the hands of Sterling, Drake's estate, Manufacturers' and Mechanics' Bank, Philadelphia, and the Cecil Bank, or persons holding for them, which establish such liabilities ; the notes belonging to the bank in Philadelphia, are drawn by Hartley, the plaintiff, but—under the undisputed evidence of Mr. Jordan— are clearly accommodation paper for the benefit of Kirlin & Co., and for which they would be responsible to Hartley.

"It does not appear that Hartley has actually paid any of these notes ; though those in the Cecil Bank have been taken up by Grow, a later endorser, who holds a judgment against Hartley which will cover the amount. The defendants contend that without some proof of payment or something more than appears here, the plaintiff cannot sustain this suit. [We now read his 8th point, but we do not charge on this point in the affirmative. The plaintiff held a judgment with special condition, and is under liabilities, as he alleges, to which we have referred. He has issued a *sci. qua. fa. ex. non,* and also to continue his lien, and we see no reason why, if there be such existing liabilities, he may not still retain his lien to secure himself against them. He does not ask to revive his judgment for the whole $20,000, but only for as much as he shows he is liable for, and so far he certainly should be permitted to retain his security; if secured upon real estate, it is no reason why he should be compelled to lose his lien because he does not pay off the debts within five years. The judgment now to be entered, if at all, may still be under the control of the court to guard the defendants from injustice, the same as might have been done under the original

[Hartley *v.* Kirlin *et al.*]

judgment and its condition. We refuse to say that the plaintiff cannot maintain this suit.]

"Perhaps there would be no great difficulty in the present case, if it was not for the alleged change of partnership, by Oakford retiring in June 1858, leaving the same firm name still to continue. This presents a question of fact for you to say whether there was such an alteration of the partnership. If there was such a change, the law requires, in order to affect other persons, that actual notice of the change and dissolution be proved to have been given to those who had dealt in business previously with the original firm. Now, there can be no question but that the three original partners, under the name of Kirlin & Co., having commenced to do business and have paper discounted with the bankers and banking institutions before named, before the change, the notes in the same name of Kirlin & Co. being continued to be presented for discount, and discounted after the change, and without any notice of it, would be for all purposes of liability to the holders of said notes, the notes of Kirlin & Co., as composed of the three original partners, Oakford, Kirlin, and Godshall, all of whom, under such circumstances, would be in law liable for the amount. There is no evidence of any such notice being given as to these banking concerns.

"It is contended, however, that William Hartley, the plaintiff, knew of this change; this presents another question of fact for you. If he did not know of it, all the liabilities, which were in evidence, would equally hold good as to all the parties, as we have explained in the cases of the bankers. The defendants claim that he had notice, and knew of the change, and refer to the testimony of Cooper, Carpenter, Halstead, and other circumstances, as argued before you: if this testimony be correct, it would seem that he must have known it. If Hartley did know of this change, and these debts were *new notes* of the *new* firm of Kirlin & Co., and not renewals of old debts, which he knew and understood (though as to the banks and bankers for lack of notice, the old firms would still be liable), we do not hold that Mr. Hartley could recover in this case, as for real debts of the old firm: his knowledge that he was endorsing or incurring liability for the members of the new firm alone, would prevent his resorting to Mr. Oakford, or his estate, on this judgment, to indemnify against debts of the old firm.

"How, then, are these notes, now in evidence, to be regarded? As to those belonging to Drake's estate and Mr. Sterling, they were clearly the renewals of older notes given by the old firm, and though given one of the partners in the new firm, he would have the right so to do, and thus to continue the liability of all the members of the old firm; Kirlin would have the right to give these notes in renewal and for extension of time; and for such

[Hartley *v.* Kirlin *et al.*]

amount of liability under them we see no difficulty in the way of the plaintiff's recovery now, unless there be something else in the case to prevent it.

"As to the later notes in the bank in Philadelphia, and the Cecil Bank, there may be more difficulty. Mr. Jordan speaks of those in his bank as *renewals*, but he also explains how and under what circumstances they were given. He says, in substance, that Hartley and Kirlin, the former being well known in the bank as a man of business punctuality, came to the bank, and with the view of aiding what we call the old firm of Kirlin & Co., entered into an arrangement that a new line of discount should be opened for the benefit of the then firm of Kirlin & Co., Hartley to be the accommodation drawer, and Kirlin & Co. the payees and endorsers of the notes, and consequently the recipients of the funds; the smaller notes of the bank, their five dollar bills, to be received and circulated in the country, but each discounted note to be paid at due in acceptable funds, and this being done a new note to be discounted, requiring at first a lessening of the amount by $100 each time; this latter condition was afterwards waived, in consequence of the pressure of the times. For several periods new funds were taken from the bank, or sent by express or private opportunity to Kirlin & Co., for further circulation in the country; and towards the latter times of these new discounts or renewals, as he calls them, having heard unfavourable reports of the circumstances of Kirlin & Co., the money for circulation, proceeds of the newly-discounted notes, was sent in a package to Kirlin & Co. under the care of Mr. Hartley. Now, can such an arrangement or manner of doing business as this be called a *renewal* of the previous *note?* Perhaps it might in ordinary language be so called, if there was no third interest, such as that of Mr. Oakford, in the present case involved, when it becomes necessary to examine closely his connection, whether real or apparent, with each particular discount. As to the bank he would be considered liable, whether it be called a renewal or a new note. Is it the same between him and Hartley? It is difficult to define exactly what a *renewal* is: so far as our opinion goes we consider it an extension of credit—a new loan of the same credit formerly given—an agreement not to require to pay the due note by other funds, but for a consideration to extend the time of payment of the old debt, by fixing a new period, through a new note, for its payment; the old debt not being paid except in form, no new fund passing either into or out of the bank, lives again in the new, because by an actual payment it has never been ended. By the arrangement, however, spoken of by Mr. Jordan, the old note at maturity is to be fully and entirely paid by other and new funds of the debtor, not a borrowing of credit, and this to be done before the new note would be dis-

counted; then upon the new discount new funds of the bank to be delivered to the payees for circulation. In truth the agreement would seem to be no more than that a new line of discount would be open for the parties to a certain amount, if the older note was paid up at due, or thereabouts; it seems to us to be a renewal of a discount, but not a renewal of the note. We cannot, under the circumstances of this case, consider that the later notes were renewals of the earlier ones. Mr. Hartley knew of this arrangement; he knew that if Kirlin & Co. could get the new notes discounted, it would be after the payment of the previous one, at some periods receiving under cover the very proceeds of the new note, and if he knew of the change of the firm, and the fact that Oakford was out of the concern, and no longer a partner, and that the new firm of Kirlin & Co. must pay up the older notes, on which Oakford, as a member of the firm between the parties themselves, would be liable, before the new note on which, between themselves, he would not be liable, would be discounted, when Kirlin & Co. did so pay up the old note and actually discharge it, we cannot see how Oakford would be liable to Hartley on such new note. He, Hartley, in such case would know that Kirlin & Co., then composed of Kirlin and Godshall, had paid up the old note of the old firm, and themselves received anew, for their own purposes, the proceeds of the new note upon which he was, in fact, their security.

"With regard to the Cecil Bank notes, under the evidence of Mr. Tome, they would seem to be substantially under similar circumstances. We consider these cases very different from that which appears in Gault v. McGrath, 8 Casey 392, where there was a continuous loan of credit, through a series of years, forming but one continuous loan of the amount of such note taken up and discharged by a new one: there the new notes were always substituted for the old notes, cancelled and taken up by them. Here, according to the testimony of Mr. Jordan, unless in the case of the last two notes, the older one was never taken up by the proceeds of the new notes, but by other funds of Kirlin & Co. Substantially, too, such seems to be a similar deduction from the testimony of Mr. Tome. We say that if the evidence shows that the earlier notes of the old firm were actually taken up and paid by funds of Kirlin & Co., other than the proceeds of the new notes, the latter cannot be considered renewals.

"Now, is there anything to prevent Mr. Hartley recovering for the amount of the Sterling and Drake notes? We refer to the evidence of Mr. Cooper, as to the levy, &c., to the execution and its discharge or release. We read also the fifth and sixth points of the defendants, and say [it is unnecessary in this case, as now submitted under the record and pleadings, to decide what might be the special effect upon Oakford or his estate, of defence sepa-

[Hartley *v.* Kirlin *et al.*]

rately taken for him. This suit was brought against him with
the other defendants,—he died, and his administrator, by writing
filed, came into court, placed himself upon record, and goes to
trial upon the record and pleadings as they now stand. We
cannot say that this is a defence to the case as it now stands,
and this is all the record raises.]

" In relation to money actually received by Hartley, as proved
by Cooper, and the amount *collected* from the assigned accounts,
proved by Mr. Jones, the defendants should be entitled to an
allowance against the plaintiff's claim here.

["As to the excess of interest paid to Messrs. Sterling and
Drake, on the discount of their paper, we think the defendants
may claim an allowance, or rather now deduct such excess or
amount paid on the last notes respectively discounted by them.
Though the notes in these cases are considered as renewals, yet
the discounting of each note is by itself a distinct transaction.
The old note on which the first excess is charged, is paid and
discharged by the proceeds of the new discounted notes, so that
for the time being, the party has voluntarily paid the whole debt
or sum loaned. Under the Act of 1858, at this day the time of
payment has too long passed to authorize the recovery of the
amount. The excess is paid upon the discount of a note at thirty,
sixty, or ninety days, as the note may run, and, as respects the
interest, is a separate transaction. The notes upon which the
earlier discounts were paid, were given up to the party as paid and
cancelled, and each discount is to be considered paid, upon each
contract of loan evidenced by the time of the particular note."]

The points submitted by the counsel for both the parties were
disposed of as follows :—

" We have substantially answered, in the body of the charge,
the several points submitted both by the plaintiff and defendants,
and need not refer to them again in detail."

Under these instructions there was a verdict and judgment in
favour of plaintiff for $3661.88.

Writs of error were sued out by both parties, the defendants
assigning for error the refusal of the court below to affirm their
fifth and eighth points, which were as follows :—

5. " The levy of the execution issued by plaintiff on the judg-
ment in question after the dissolution, was a satisfaction of such
execution *pro tanto*, as between the plaintiff, with notice of such
dissolution, and Oakford the retiring partner, and no agreement
of either of the other partners, not assented to by him, could in
any way affect his rights."

8. " That this is an action to liquidate the amount due to plain-
tiff under the conditions of the judgment, and he can only recover
for the amount actually paid by him."

And so much of the charge as is printed above in brackets.

[Hartley *v.* Kirlin *et al.*]

The error assigned by the plaintiff was the refusal by the court to charge that " if under the evidence the notes now in evidence are renewals of the originals, they are entitled, as such, to the same protection by the collateral security of the judgment as would be the original notes ; and that under the evidence, if believed by the jury, the notes in evidence are renewals in law of those given in 1857."

*Stanley Woodward*, for Hartley.

*Jessup & Hand*, for Kirlin *et al.*

The opinion of the court was delivered, May 6th 1863, by

LOWRIE, C. J.—The plaintiff below thinks he did not get enough by his verdict, and the defendant thinks he got too much, and therefore both parties have sued out writs of error. This judgment was given to the plaintiff to secure him for liabilities assumed, and to be assumed for Kirlin, Godshall and Oakford, and the jury have found that several of the liabilities claimed here were assumed after the plaintiff knew that Oakford had left the firm. It is plain, therefore, that the judgment does not cover them, unless it appear that those liabilities were renewals of old ones, for which Oakford was liable. The jury have found that the old ones were actually taken up and paid by funds that were not the proceeds of the new notes; and we agree with the court below that, in such a case, the new notes cannot be considered as a renewal of the old ones, and a continuance of the old debt, as in favour of the plaintiff, who knew the mode in which the business was done. We cannot, therefore, sustain the plaintiff's assignment of error. The plea of payment is properly made out, as to these original liabilities, by the same evidence that proves the new ones not to be renewals.

The parties contracted that the plaintiff might issue executions for his liabilities before actually paying them, and such a contract-remedy is allowed by our law, subject to the equitable control of the court. The contract, therefore, shows the law of the case. The plaintiff did not need a *sci. fa. quare ex. non*, and judgment thereon, in order to justify his execution. But he chose thus to liquidate the amount for which execution might issue, and the contract shows that the liquidation is to be measured by the plaintiff's liabilities, and not by his payments for the defendants. His judgment will still be subject to the equitable control of the court, if the defendants should themselves discharge those liabilities. And if, in a suit between them and the holders of the notes, they can get the claims reduced on account of the usury alleged to have been charged, the court will exercise a similar control, so that the plaintiff, as surety, shall not recover

[Hartley *v.* Kirlin *et al.*]

more than he is liable for; but he ought not to have his rights involved in the dispute about the usury.

But Oakford takes a special ground of defence for himself: that after the plaintiff knew that he had withdrawn from the firm of Kirlin & Co., the plaintiff issued an execution, and levied on property enough of the other defendants to pay the debt, and afterwards discharged the levy. Now his first question to himself relative to this fact would be, is this a defence? And supposing it is, is it a legal or an equitable defence? In strict law, it cannot be a defence; for then it would discharge the other defendants likewise, which would not be just. But suppose the equity of the law will allow it, then how shall I plead it? I cannot plead payment, for that is not true either in fact or in effect—not in fact in any common or natural sense of the word payment; and not in effect, because if sustained, it would defeat the plaintiff as against the other defendants likewise. I must therefore plead the truth specially, as an equitable *bar* to an action against *me*, and then possibly equity may mould the judgment of the law so as to protect me.

But he did not thus plead. He pleaded the fact of payment, and that was true as to some of the claims, and not true as to the others. He had no sort of plea of the fact that constituted his supposed equitable defence, and therefore that fact could not be found by the jury, and is not on the record, and cannot be used as an element of the judgment.

Besides this, it is not found that the remaining partners were to pay the debts of the original firm, or that the plaintiff knew this, and therefore there is no ground for putting Oakford in the position of surety for the remaining partners, as against the plaintiff, without saying how this would be, if these facts had been found. He has neither pleaded nor proved an equitable defence.

> Judgment (on each writ of error) for the defendant therein, that the plaintiff take nothing by his writ; and judgment below affirmed, and record remitted.